JOSEPH GLORIOSO ON BEHALF OF HIS
MINOR DAUGHTER, MOLLY GLORIOSO

VERSUS

THE CITY OF KENNER

NO. 19-CA-298

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 786-435, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING


December 18, 2019


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.


**VACATED**
    **RAC**
    **MEJ**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLANT,
JOSEPH GLORIOSO ON BEHALF OF HIS MINOR DAUGHTER, MOLLY
GLORIOSO
    Edward P. Gothard
    Harold L. Ehrenberg

COUNSEL FOR DEFENDANT/APPELLEE,
THE CITY OF KENNER
    C. A. Fleming, III

**CHAISSON, J.**

In this case arising from an injury to a minor child while attending a gymnastics camp in a facility owned by the City of Kenner ("Kenner"), Joseph Glorioso, on behalf of his minor daughter, appeals an April 3, 2019 judgment of the trial court that granted Kenner's motion for summary judgment and dismissed the lawsuit with prejudice. For the following reasons, we vacate the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On August 8, 2017, Molly Glorioso, then age five, was attending a gymnastics class at the Barbre Gym located at 1610 Reverend Wilson Drive in Kenner. This gym is owned by Kenner and operated by its Parks and Recreation Department. During class, Molly slid off a stage and cut her right thigh and buttock on a broken metal electrical box located on the front of the stage. On August 7, 2018, Mr. Glorioso filed a petition for damages on his daughter's behalf under various theories of negligence and premises liability. In its answer filed August 27, 2018, Kenner denied the allegations and raised various affirmative defenses.

On December 18, 2018, Kenner filed a motion for summary judgment in which it argued that La. R.S. 9:2795, the Recreational Use Statute, provides blanket tort immunity barring Mr. Glorioso's claims of negligence and injury. In a judgment on March 12, 2019, the trial court denied this motion for summary judgment. The City re-urged its motion, and after rehearing, the trial court, on April 3, 2019, granted the motion for summary judgment and dismissed Mr. Glorioso's claims. This timely appeal follows.

1

# DISCUSSION

On appeal, Mr. Glorioso argues that the trial court legally erred in applying La. R.S. 9:2795 to the facts of this case. In particular, Mr. Glorioso argues that the trial court incorrectly extended the language of the statute to add gymnastics as a "recreational purpose," and also incorrectly extended the definition of land to include any building, whether or not "attached to the realty." Kenner argues that urban land and buildings, including Barbre Gym, are included under the statute, and that the gym is used for recreational purposes under the "unlimited omnibus clause," and therefore the immunity act applies and Kenner is not liable for Molly's injuries.

Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *In re Succession of O'Krepki*, 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 577. A motion for summary judgment should be granted if, after an adequate opportunity for discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(4).

At issue in this appeal is the correct interpretation of La. R.S. 9:2795. The starting point in the interpretation of any statute is the language of the statute itself as what a legislature says in the text of a statute is considered the best evidence of its intent and will. *Mayeux v. Charlet*, 16-1463 (La. 10/28/16), 203 So.3d 1030, 1036. La. R.S. 9:2795 reads in pertinent parts:

A. As used in this Section:

(1) "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.
…

(3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.

…

B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

(a) Extend any assurance that the premises are safe for any purposes.

(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

…

E. …

(2)(a) The limitation of liability provided in this Section shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes.

(b) The provision of supervision on any land managed as a public park by the state or any of its political subdivisions does not create any greater duty of care which may exist and does not create a duty of care or basis of liability for personal injury or for damage to personal property caused by the act or omission of any person responsible for security or supervision of park activities, except as provided in Subparagraph (E)(2)(d) of this Section.

(c) For purposes of the limitation of liability afforded to parks pursuant to this Section this limitation does not apply to playground equipment or stands which are defective.

…

When interpreting the language of a statute, words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. La. R. S. 1:3; La. C.C. art. 10. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the language of the law is

susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.  La. C.C. art. 10.

We examine first whether gymnastics is a "recreational purpose" such that the limitation of liability, as provided in Subsection E(2)(a), is applicable. Subsection A(3) does not provide a specific definition of "recreational purpose," but does enumerate an exemplary list of activities such as fishing, hunting, and camping.  Gymnastics is not included in this list.  As Kenner points out, the list enumerated is not exclusive because it is preceded by the phrase "includes but is not limited to."  Kenner argues that this "omnibus clause" is unlimited, and cites as support for its position our previous decision in *Richard v. Louisiana Newpack Shrimp Co., Inc.*, 11-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541.

In *Richard*, the plaintiff, while crossing a small levee in order to access and load a boat in preparation for departure to a camp, was injured when she fell in a hole in the levee allegedly caused by the defendant's delivery trucks.  Recognizing that loading a boat and preparing to depart to a camp are not any of the specific enumerated recreational activities in La. R.S. 9:2795(A)(3), this Court examined the language of the statute to determine whether it was broad enough to include the normal activities associated with boating and camping, both activities that are specifically enumerated as recreational activities in the statute.  *Id*. at 546.  The Court found that "the statute does not require that the injury arise out of the recreational activity *per se*, as long as the person injured was on the property for a recreational purpose."  *Id*.  The issue in the case before us *sub judice* is not whether Molly was engaged in an activity that is normally associated with one of the enumerated recreational activities in the statute, but rather whether gymnastics itself is a recreational activity as contemplated by the statute.  Therefore, we do not find the *Richard* case instructive on this issue.

In its interpretation of a previous version of La. R.S. 9:2795, the Louisiana Supreme Court observed that the statute limits the right of plaintiffs to bring tort actions, and, as such, is in derogation of a common right and must be strictly construed. *Keelen v. State, Dep't of Culture, Recreation & Tourism*, 463 So.2d 1287, 1289 (La. 1985). The Court also later observed that this rule of strict interpretation is so well settled that it must be presumed that the legislature acted with full knowledge of the strict interpretation of statutes of this nature. *Monteville v. Terrebonne Par. Consol. Gov't*, 567 So.2d 1097, 1100 (La. 1990). When there is any doubt about the intent or meaning of laws in derogation of common rights, such as the Recreational Use Statute, the statute must be given the effect which makes the least rather than the most change in the existing body of law. *Id*. Finally, the legislative intent behind La. R.S. 9:2795 may be found in the statement of purpose contained in 1975 La. Acts, No. 615, §1, which provides, "[t]he purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131, 150.

Mr. Glorioso argues that the activities enumerated in the list of recreational purposes are characterized by physical activities typically requiring the outdoors, and that gymnastics, being a sport practiced with equipment indoors, is dissimilar from these activities. To the contrary, Kenner argues that gymnastics is a summer sport, and that the list includes activities that are both indoor sports such as figure skating and non-sports such as viewing historical sites.

The activities enumerated in the statute are clearly activities that are typically done in, and require, the true outdoors, such as fishing, hunting, and camping. And while a very limited few of the activities enumerated in the statute,

typically done in the true outdoors, might conceivably also be done indoors, this does not evidence an intent on the part of the legislature to expand the immunity of the statute to include *all* recreational activities regardless of whether they are typically done outdoors or indoors. In our opinion, the list of enumerated activities evidences a clear intent of the legislature to grant immunity for those recreational activities in which one engages in the true outdoors. Strictly construing this statute, as we are required to do, we find that gymnastics is not a recreational purpose as contemplated by La. R.S. 9:2795(A)(3) and as required under Subsection E(2)(a) for the grant of immunity for Kenner.

## CONCLUSION

Having found that gymnastics is not a recreational purpose as contemplated by La. R.S. 9:2795(A)(3), we conclude that Kenner has no immunity under the statute. We therefore pretermit any further discussion of the interpretation of the statute, including whether the Barbre Gym is a building "attached to the realty" as required by the statute. Kenner has failed to show that it is entitled to judgment as a matter of law. Accordingly, we vacate the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

## <u>VACATED</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 18, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-298

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
EDWARD P. GOTHARD (APPELLANT)          C. A. FLEMING, III (APPELLEE)

**MAILED**
HAROLD L. EHRENBERG (APPELLANT)
ATTORNEY AT LAW
2113 VETERANS BOULEVARD
METAIRIE, LA 70002